1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEROY ALLEN HELLER,                    No.  2:  15-cv-0587 MCE KJN P

12              Petitioner,

13        v.                                FINDINGS & RECOMMENDATIONS

14   K. HOLLAND, et al.,

15              Respondents.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2011 conviction for sexual

20   penetration of a child 10 years of age or younger in violation of California Penal Code § 288.7(b)

21   (counts one and two), lewd and lascivious act on a child under 14 years of age in violation of

22   California Penal Code § 288(a) (counts three, four, five, six, seven, nine and ten), and using a

23   minor to pose for pornography in violation of California Penal Code § 311.4(c) (counts eleven

24   through thirty-two).  Petitioner is serving a determinate term of 84 years and an indeterminate

25   term of 60 years to life in prison.[1]

26   _____

     [1]   The California Court of Appeal reversed one count of lewd and lascivious act on a child under
27   14 (count eight), and ordered a stay on the sentence of four counts.  People v. Heller, 2013 WL
     6018051 at *11 (2013).  The California Court of Appeal directed the trial court to prepare an
28   amended abstract of judgment reflecting its orders.  (Id.)  On August 22, 2017, respondent lodged

                                          1

The petition raises the following claims:  1) evidentiary error; 2) jury instruction error; 3) insufficient evidence; and 3) sentence violates double jeopardy.  After carefully reviewing the record, the undersigned recommends that the petition be denied.

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent

_____

the amended abstract of judgment.  (See ECF No. 28.)

may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

---

[2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1  must show that the state court's ruling on the claim being presented in federal court was so

2  lacking in justification that there was an error well understood and comprehended in existing law

3  beyond any possibility for fairminded disagreement." Richter,131 S. Ct. at 786-87.

4      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

5  court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

6  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

7  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

8  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

9  considering de novo the constitutional issues raised.").

10     The court looks to the last reasoned state court decision as the basis for the state court

11  judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

12  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

13  previous state court decision, this court may consider both decisions to ascertain the reasoning of

14  the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

15  federal claim has been presented to a state court and the state court has denied relief, it may be

16  presumed that the state court adjudicated the claim on the merits in the absence of any indication

17  or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. This

18  presumption may be overcome by a showing "there is reason to think some other explanation for

19  the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

20  803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims

21  but does not expressly address a federal claim, a federal habeas court must presume, subject to

22  rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct.

23  1088, 1091 (2013).

24     Where the state court reaches a decision on the merits but provides no reasoning to

25  support its conclusion, a federal habeas court independently reviews the record to determine

26  whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

27  Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

28  review of the constitutional issue, but rather, the only method by which we can determine whether

4

a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

III. Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein:

> The minor lived with her mother, her half-sister, and her mother's boyfriend (defendant) from 2006 through 2008. Defendant cared for the minor when the mother was not home.
>
> Child Protective Services (CPS) removed the minor from the mother's home in December 2008 because of domestic violence between the mother and defendant, and the minor began living with her grandmother. One day later, defendant went into hiding with the half-sister. Defendant testified that he left because he was worried CPS might also take the half-sister. He initially stayed with his family in Marysville, but the mother subsequently helped him travel with the half-sister to South Dakota, where the mother's son lived. Defendant and the half-sister stayed in South Dakota from March

5

through August 2009.

Meanwhile, Pamela Aragon and Amber Bragg lived with the mother during the summer of 2009. Aragon and Bragg, along with a man named Michael Silence, stole some belongings from the mother's apartment. During the theft, Bragg found a SanDisk brand camera memory card taped to the bottom of a computer keyboard. The memory card contained photographs showing the vaginal area of a child. Bragg and Aragon recognized the minor as the child in some of the photographs.

Silence and Aragon brought the memory card to the minor's grandmother. The grandmother viewed the photographs on the memory card, recognized the minor in some of them, and contacted the police.

Detective Vincent Recce of the Sacramento County Sheriff's Department's high tech crimes task force testified about People's exhibit 16, which is a report showing each photograph recovered from the memory card, along with information associated with each photograph, such as image numbers and the date and time of each photograph. Twenty-two photographs were taken during a 29–minute session on September 1, 2008.

Law enforcement also recovered two deleted photographs from the camera memory card. One photograph was taken on June 10, 2008, and shows what appears to be a green sex toy pressed against a girl's labia. The other deleted image was taken in July 2007 (around the same time defendant, the minor and the half-sister visited Georgia), and depicts the mother's granddaughter at a lake property in Georgia.

Deputy Cory Newman interviewed the minor in July 2009 in response to a CPS report concerning child molestation. The minor told Deputy Newman that defendant made her watch "nasty movies" and take her clothes off. She also reported that she had seen defendant put his fingers and penis inside her mother, and defendant did the same thing to the minor when her mother was not home. The minor said when they watched nasty movies, defendant tried to put his penis inside her but his penis was too big and her hole was too small. She said defendant also put a green mechanical penis inside her but could not get it in. According to the minor, defendant sometimes touched her through her clothes and rubbed her vagina, and sometimes inserted his fingers in her vagina, but defendant never took photographs of her without her clothes on. She related that defendant told her not to tell her mother about what he was doing because the mother would "freak out" and defendant did not want to go to jail. The minor said she never told her mother because she did not want her mother and defendant to fight and did not want her mother to "freak out."

A specialist at the special assault forensic evaluation (SAFE) facility interviewed the minor in August 2009. A recording of the interview was played at defendant's trial. The minor initially denied that anyone touched her tee tee, a term she used for male and

female genitalia, but subsequently disclosed that defendant touched her tee tee. She said defendant touched her vagina 27 or 29 times, touched her vagina with "mechanicals" 62 times, and took pictures of her vagina 10 times.

The minor reported the following during the interview: Defendant began touching her vagina when she was eight years old. The minor was nine years old when defendant last touched her. Defendant made her watch pornographic movies, took off her clothes and his clothes, and touched her vagina while she was on his bed. Defendant used his hand to touch her vagina on the outside. He also used a big green mechanical thing to wiggle the outside of her vagina, then used a small red mechanical penis on the outside of her vagina. She saw defendant's penis and it looked like the mechanical thing. On another occasion, defendant's penis touched the outside of her vagina. Defendant also showed her pictures of naked ladies on the television. [Footnote 2.] The minor never told anyone what happened with defendant because it was a secret. Defendant said he did not want the mother to "freak out" and he might get in trouble.

[Footnote 2: The mother admitted there was pornography on her home computer, which was in her bedroom.]

The mother learned in August 2009 that the minor had accused defendant of molesting her, but the mother still helped defendant hide from law enforcement officials. Defendant found out that the minor accused him of molesting her in late August or early September 2009. He left South Dakota in August 2009 and moved to Georgia. Defendant was arrested in Georgia in October 2009.

Although she was reluctant to talk about what happened to her because she was embarrassed and because defendant told her not to talk about those things, the minor testified at trial that defendant touched her vagina more than once and showed her his penis. In addition, she said the statement in her diary that defendant "had sex on" her was true.

The mother admitted owning the green and silver sex toys depicted in the photographs presented by the prosecution. Defendant knew where the mother kept her sex toys.

Defendant admitted he took nude photographs of the mother with sex toys, but he denied taking any nude photographs of the minor. He said if he had taken the photographs of the minor he would not have left the camera memory card in his apartment where someone could find it. He denied that he ever touched the minor's vagina with his penis, put his fingers inside the minor's vagina, rubbed the minor's vagina through her clothes, intentionally showed the minor his penis, or had the minor watch pornography with him. He said he never directed the minor to use any kind of mechanical device on her vagina. But defendant admitted the brown recliner shown in a photograph from the camera card was a recliner in his living room when he lived with the minor. Defendant agreed that the person touching the minor in the photograph was in his apartment because the photograph showed the minor sitting on defendant's recliner.

> Robin Morse testified as a character witness for defendant. According to Morse, the mother asked for help to fabricate molestation charges against defendant so that the mother could obtain custody of the half-sister. The mother admitted telling Morse that in order to get her children, the mother had to get rid of defendant. But the mother denied asking Morse to help her frame defendant for child molestation.

People v. Heller, 2013 WL 6018051 at *2-4 (2013).

IV. Analysis

    A. Claim One: Alleged Denial of Right to Present a Defense

    *Background*

    Petitioner alleges that the trial court improperly sustained an objection to testimony from Michael Silence that petitioner said that he went to Georgia because he did not want Child Protective Services ("CPS") to take his daughter, Jazmin. The California Court of Appeal denied this claim for the reasons stated herein:

> Defendant further contends the trial court improperly excluded defendant's out-of-court statement explaining why he left Sacramento, because the statement was admissible under the state-of-mind exception to the hearsay rule.
>
> Defendant claims he made an out-of-court statement to Michael Silence that defendant left California because he did not want CPS to take the half-sister. Defendant wanted Silence to testify regarding defendant's out-of-court statement, arguing the statement was relevant because the prosecution was attempting to use defendant's flight as evidence of consciousness of guilt. Defendant said the out-of-court statement was offered for the nonhearsay purpose of corroborating his anticipated trial testimony that he fled California to prevent CPS from taking the half-sister because of the domestic violence, and not because defendant knew he had molested the minor. The trial court sustained the prosecution's objection that the proposed testimony was hearsay.
>
> Defendant now claims his statement to Silence was admissible under Evidence Code section 1250, an exception to the hearsay rule for evidence of a person's then existing state of mind. Evidence of a statement of the declarant's then existing state of mind, including a statement of intent, plan or motive, is admissible when (1) the evidence is offered to prove the declarant's state of mind at that time or at any other time when it is itself an issue in the action; or (2) the evidence is offered to prove or explain acts or conduct of the declarant. (Evid.Code, §§ 1250, subd. (a), 1252.) The state-of-mind hearsay exception requires a showing that the statement was made under circumstances which indicate its trustworthiness. (Ibid.)
>
> Once again, however, defendant failed to preserve his claim of error

because he did not assert the state-of-mind exception, or any hearsay exception, at trial. (<u>People v. Morrison</u> (2004) 34 Cal.4th 698, 724.) Consequently, the prosecution did not have an opportunity to respond to the contention that the state-of-mind hearsay exception applied to defendant's statement, and the trial court had no opportunity to decide this fact-intensive claim. (<u>People v. Edwards</u> (1991) 54 Cal.3d 787, 819–820 [determination of whether Evidence Code section 1250 applies requires examination of peculiar facts of the individual case].) Nor did defendant establish a nonhearsay purpose for admitting his statement to Silence.

In any event, defendant does not show how the record at the time of the trial court's ruling supports admission of his hearsay statement under the state-of-mind exception. As the proponent of the statement, defendant bears the burden of producing evidence sufficient to establish the necessary foundation for its admission. (<u>People v. Ramos</u> (1997) 15 Cal.4th 1133, 1178.) We do not assume error in the absence of a record affirmatively supporting such a finding. (<u>Ibid.</u>)

Defendant claims he is entitled to present a nonincriminating reason for his departure. But the jury heard from defendant, the mother and the grandmother that CPS removed the minor from the mother's home because of domestic violence issues. Detective Linke and the mother said at the time defendant fled Sacramento, child molestation allegations against defendant had not been disclosed. Defendant told the jury that he fled because he was concerned CPS would take the half-sister. Defendant said he did not learn about the minor's accusation against him until about five months after he left California. The jury heard ample evidence of an explanation for defendant's departure that did not point toward a consciousness of guilt. The trial court did not abuse its discretion by excluding defendant's statement to Silence. (<u>People v. Smith</u> (2003) 30 Cal.4th 581, 628–629 [in a case where the defendant sought to admit an audio recording of his jailhouse conversation with his wife to show remorse, the Supreme Court found no abuse of discretion in excluding the evidence in part because the defendant had ample opportunity to present other evidence of remorse].)

(<u>Id.</u> at 6.)

*Exhaustion*

Respondent argues that petitioner did not exhaust claim one because he failed to raise the constitutional aspects of the trial court's alleged error in the California Court of Appeal. In his opening brief filed in the California Court of Appeal, petitioner argued only that Silence's testimony was admissible under California Evidence Code § 1250. (See Respondent's Lodged Document 1 at pp. 38-42.) In his petition for review filed in the California Supreme Court, petitioner argued that the trial court's ruling excluding Silence's testimony also violated his

federal due process right to present relevant evidence, citing <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973) and <u>Skipper v. South Carolina,</u> 476 U.S 1 (1986).  (Respondent's Lodged Document 5 at 7.)  The California Supreme Court denied the petition for review without comment or citation. (Respondent's Lodged Document 6.)

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3).[3]  A waiver of exhaustion, thus, may not be implied or inferred.  A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court.  <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir. 1985); <u>see also</u> <u>Casey v. Moore</u>, 386 F.3d 896, 915-16 (9th Cir. 2004) ("[A] petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts ... in the manner required by the state courts.").

A claim is not fairly presented if it is raised "in a procedural context in which its merits will not be considered."  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1994).  "Raising the claim in such a fashion does not ... constitute 'fair presentation.'"  <u>Castille</u>, 489 U.S. at 351.  In <u>Castille</u>, the Supreme Court unanimously found a claim to be unexhausted for lack of fair presentation when the state prisoner raised only state law claims in his intermediate appellate court filings and raised his federal claim for the first time on discretionary review before the state high court.  <u>Id.</u>; <u>see also</u> <u>Casey</u>, 386 F.3d at 916-18 (applying <u>Castille</u> and holding that when a state prisoner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them," and they were unexhausted).

Under California law, "on a petition for review the [California] Supreme Court normally will not consider an issue that the petitioner failed to timely raise in the California Court of Appeal."  Rule 8.500(c)(1), Cal. R. Ct.  The exceptions to this rule are when: the California

---

[3]  A petition may be denied on the merits without exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2).

Supreme Court has granted review, Rule 8.516(b)(1), Cal. R. Ct.; or the newly-raised claim involves a pure question of law, not turning upon disputed issues of fact, and was pertinent to a proper disposition of the case or involved matters of particular public importance. People v. Randle, 35 Cal. 4th 987, 1001-02 (2005), overruled on other grounds in People v. Chun, 45 Cal.4th 1172 (2009). These predicates did not exist in petitioner's case with respect to his claim challenging the trial court's ruling to exclude the Silence testimony. Accordingly, claim one is not exhausted.

*Merits*

In the alternative, respondent argues that petitioner's claim is without merit. 28 U.S.C. § 2254(b)(2) (a petition may be denied on the merits without exhaustion of state court remedies). Accordingly, the undersigned herein addresses the merits of this claim.

Courts may only deny unexhausted claims on the merits if it is "perfectly clear" that the claim is not a "colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623–24 (9th Cir. 2005) (quoting Granberry v. Greer, 481 U.S. 129, 135 (1987)). Unexhausted claims are reviewed de novo where there is no reasoned state court decision addressing that claim. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

As discussed above, in the petition for review, petitioner argued that the trial court's ruling excluding Silence's testimony regarding what petitioner told him about why he fled violated his right to present a defense. It is well established that the Due Process Clause guarantees a criminal defendant a meaningful opportunity to present a complete defense. See Crane v. Kentucky, 476 U.S. 683, 690 (1986); Chambers v. Mississippi, 410 U.S. 284, 294 (1973). That right is violated when a defendant is improperly barred from introducing critical evidence. DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001). Even if the evidence is improperly excluded, however, petitioner is not entitled to relief unless he can show that the exclusion had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); DePetris, 239 F.3d at 1063 (applying harmless error test to claim of denial of right to present a defense).

////

11

California Evidence Code Section 1250 provides as follows:

> (a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:

> (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or

> (2) The evidence is offered to prove or explain acts or conduct of the declarant.

> (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed.

Cal. Evid. Code § 1250.

In the answer, respondent argues that petitioner's statement to Silence was not a then-existing statement of intent, but rather a prohibited statement of memory or belief offered to prove a fact remembered or believed. Accordingly, respondent argues, Silence's statement was properly excluded under California Evidence Code § 1250 and did not violate petitioner's right to due process.

Rather than deciding whether Silence's statement was admissible under California Evidence Code § 1250, the undersigned finds that any error in excluding it was harmless. As noted by the California Court of Appeal, the jury heard ample evidence of an explanation for petitioner's departure that did not point toward a consciousness of guilt. Petitioner testified that when he left California with his daughter, he was not aware of the molest allegations. (Reporter's Transcript ("RT") at 769, 786, 788.) Petitioner testified that the victim had been taken by CPS due to domestic violence. (Id.) Laura, the victim's mother, testified that CPS took the victim due to domestic violence. (Id. at 636-37.) Laura testified that after CPS took the victim, petitioner took his daughter because "he wasn't going to allow CPS" to have her. (Id. at 637.) Robin Morse testified that when she helped petitioner flee, she did not know that petitioner had been accused of molesting the victim. (Id. at 743-44.) Laura's mother, the victim's grandmother,

testified that when the victim came to live with her in December 2008, she heard it was because of domestic violence. (Id. at 242.)

As indicated above, the jury heard testimony from several witnesses that at the time petitioner initially fled, he had not been accused of molesting the victim. The testimony of the witnesses cited above indicated that petitioner initially fled due to the domestic violence accusation. Testimony by Silence that petitioner told him that he left California because he did not want CPS to take his daughter was cumulative to the testimony cited above. Moreover, the evidence that petitioner molested the victim and took the photographs of her was strong. For these reasons, the undersigned finds that exclusion of Silence's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, this claim should be denied because it is "perfectly clear" that it is without merit.

B. Claim Two: Alleged Jury Instruction Error

*Background*

Petitioner alleges that the trial court should not have instructed the jury regarding his flight. The California Court of Appeal denied this claim for the reasons stated herein:

> Defendant also claims there was insufficient evidence to support instructing the jury with CALCRIM No. 372 [defendant's flight]. The trial court instructed the jury pursuant to CALCRIM No. 372 as follows: "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. [¶] If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. [¶] However, evidence that the defendant fled or tried to flee cannot prove guilt by itself." In defendant's view, the evidence showed that he left California to prevent CPS from taking the half-sister and to defuse his volatile relationship with the mother, not to flee prosecution for child molestation.

> "'A flight instruction is proper whenever evidence of the circumstances of [a] defendant's departure from the crime scene ... logically permits an inference that his movement was motivated by guilty knowledge.' [Citation.]" (People v. Abilez (2007) 41 Cal.4th 472, 522; see also People v. Visciotti (1992) 2 Cal.4th 1, 60–61.) Here, while the jury could attribute an innocent explanation for defendant's flight, it could also reasonably infer that defendant fled in order to avoid arrest for his unlawful conduct with the minor, and that his leaving showed consciousness of guilt.

> Substantial evidence supports the finding that defendant molested

13

the minor and took sexually explicit photographs of her. Defendant left his apartment and went into hiding the day after CPS took the minor out of the mother's home. Defendant learned in late August or early September 2009 that the minor accused him of molesting her, and he continued to hide. In fact, he moved from South Dakota to Georgia in August 2009. On this record, there was no instructional error.

People v. Heller, 2013 WL 6018051 at *7 (2013).

*Exhaustion*

Respondent argues that petitioner's claim alleging jury instruction error is not exhausted because he did not raise a constitutional argument regarding this claim in his brief filed in the California Court of Appeal. In his state appellate brief, petitioner did not argue that the alleged jury instruction error violated his constitutional rights. (Respondent's Lodged Document 1 at 43-45.) However, in the petition for review filed in the California Supreme Court, petitioner argued that the jury instruction violated his constitutional rights. (Respondent's Lodged Document 5 at 8-9.)

As discussed above, the California Supreme Court will consider claims not raised before the California Court of Appeal when the California Supreme Court has granted review, Rule 8.516(b)(1), Cal. R. Ct.; or the newly-raised claim involves a pure question of law, not turning upon disputed issues of fact, and was pertinent to a proper disposition of the case or involved matters of particular public importance. People v. Randle, 35 Cal. 4th 987, 1001-02 (2005). These predicates did not exist in petitioner's case with respect to his claim alleging jury instruction error. Accordingly, this claim is not exhausted.

*Merits*

In the alternative, respondent argues that petitioner's claim is without merit. 28 U.S.C. § 2254(b)(2) (a petition may be denied on the merits without exhaustion of state court remedies). Accordingly, the undersigned herein addresses the merits of this claim.

A permissive inference does not require a jury to draw a conclusion, but "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts." Francis v. Franklin, 471 U.S. 307, 314 (1985). Permissive inference instructions are constitutional unless the

14

conclusions the instruction suggests cannot be justified by reason and common sense in light of the proven facts before the jury. Id. at 314-15; Hanna v. Riveland, 87 F.3d 1034, 1037 (9th Cir. 1996); United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994). Therefore, a permissive inference instruction does not affect the application of the "beyond a reasonable doubt" proof standard unless there is no rational way the jury could make the connection permitted by the inference. United States v. Warren, 25 F.3d at 897 n.4.

Under California law, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." People v. Ray, 13 Cal.4th 313, 345 (1996); Cal.Penal Code § 1127c. As noted by the California Court of Appeal, petitioner left his apartment and went into hiding the day after CPS took the victim out of her mother's home. Petitioner learned in late August or early September 2009 that the victim accused him of molesting her, and he continued to hide. Petitioner moved from South Dakota to Georgia in August 2009. Based on this record, the permissive inference was one "that reason and common sense justify in light of the proven facts before the jury." Francis, 471 U.S. at 314–15; Warren, 25 F.3d at 898.

Furthermore, permissive inference instructions generally do not result in constitutional error where, as here, other instructions "condition, qualify or explain them." Hanna, 87 F.3d at 1038; Warren, 25 F.3d at 899 (problems can be avoided "if other instructions condition and qualify the permissive inference instruction, so as to make clear that the judge is not implying the jury should return a guilty verdict"). Here, the jury was instructed on the presumption of innocence (Court Transcript ("CT") at 263), the prosecution's burden of proving petitioner's guilt beyond a reasonable doubt (Id. at 263-64), and the fact that evidence of flight or attempted flight could not prove guilt by itself (Id. at 270). The jury is presumed to have followed its instructions. See Weeks v. Angelone, 528 U.S. 225, 226 (2000). In these circumstances, the challenged instruction did not have the effect of unconstitutionally shifting the burden of proof or otherwise violating petitioner's constitutional rights. See Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002) (flight instruction did not violate due process, where court gave instructions regarding the evaluation of testimony and evidence, and instruction stated that flight alone was insufficient to

15

1    establish guilt).

2          For the reasons discussed above, the trial court's reading of the flight instruction did not

3    violate petitioner's right to due process.  The undersigned recommends that this claim be denied

4    because it is perfectly clear that it is without merit.

5          C.  <u>Claim Three: Alleged Insufficient Evidence</u>

6          Petitioner alleges that there was insufficient evidence to support counts 12, 13, 18, 19, 20,

7    22, 23, 27 and 29 for using a minor to pose for pornography in violation of California Penal Code

8    § 311.4(c).

9          Petitioner raised his federal insufficient evidence claim in both the California Court of

10   Appeal and California Supreme Court.  Neither court specifically addressed the merits of the

11   federal claim.  When there is no reasoned state court opinion addressing the merits of a federal

12   claim, this court conducts "an independent review of the record" to determine whether the state

13   court's decision was an objectively unreasonable application of clearly established federal law."

14   <u>Plasencia v. Alameida</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006).

15         California Penal Code § 311.4(c) provides,

16              Every person who, with knowledge that a person is a minor under
                the age of 18 years, or who, while in possession of any facts on the
17              basis of which he or she should reasonably know that the person is
                a minor under the age of 18 years, knowingly promotes, employs,
18              uses, persuades, induces, or coerces a minor under the age of 18
                years, or any parent or guardian of a minor under the age of 18
19              years under his or her control who knowingly permits the minor,
                to engage in or assist others to engage in either posing or modeling
20              alone or with others for purposes of preparing any representation of
                information, data, or image, including, but not limited to, any film,
21              filmstrip, photograph, negative, slide, photocopy, videotape, video
                laser disc, computer hardware, computer software, computer floppy
22              disc, data storage media, CD-ROM, or computer-generated
                equipment or any other computer-generated image that contains or
23              incorporates in any manner, any film, filmstrip, or a live
                performance involving, sexual conduct by a minor under the age of
24              18 years alone or with other persons or animals, is guilty of a
                felony. It is not necessary to prove commercial purposes in order to
25              establish a violation of this subdivision.

26   (Cal. Penal Code § 311.4(c).)

27   ////

28   ////

                                          16

The California Court of Appeal denied petitioner's related state law claim for the reasons stated herein:

> Defendant further argues that some of his convictions for using a minor to pose for pornography must be reversed because certain pairs of photographs do not depict different poses. [Footnote 5.] Counts twelve, thirteen, eighteen, nineteen, twenty, twenty-two, twenty-three, twenty-seven and twenty-nine charged defendant with a violation of section 311.4, subdivision (c). That section says a person who knowingly uses a minor to engage in "posing or modeling" for any image involving sexual conduct is guilty of a felony. Defendant identifies certain pairs of photographs [Footnote 6.] and contends they do not depict "an act of posing or modeling separate from the charged act immediately preceding it." We conclude section 311.4, subdivision (c) does not impose a requirement that each photograph involve a substantially different pose.

> [Footnote 5: We do not address a claim relating to count twenty-four in sections VII and VIII of defendant's opening brief because the claim is not supported by argument. (People v. Jones, supra, 17 Cal.4th at p. 304.) Defendant may have inadvertently included count twenty-four in the headings to section VII and VIII of the opening brief; the headings to those sections in defendant's reply brief do not reference count twenty-four.]

> [Footnote 6: Images 544 and 545; 550 and 551; 551 and 552; 552 and 553; 554 and 555; 555 and 556 559 and 560; 562 and 563; and 543 and 544.]

> In People v. Shields (2011) 199 Cal.App.4th 323 (Shields), a defendant was convicted of three counts of violating section 311.4, subdivision (c) based on photographs he took of a seven-year-old girl. (Id. at pp. 325, 328–329.) The defendant took the photographs on the same occasion but created three different images involving penetration of the girl's vagina, masturbation, and nudity. (Id. at pp. 326, 328.) The defendant argued on appeal that the production of multiple photographs involving the same victim on the same occasion involved only one section 311.4, subdivision (c) violation. (Id. at pp. 330–331.) But the court in Shields held that the plain language of section 311.4, subdivision (c) authorized a conviction for each photograph. (Shields, supra, 199 Cal.App.4th at p. 331.) The court added that interpreting section 311.4, subdivision (c) to authorize multiple convictions for multiple photographs advances the legislative purpose of section 311.4. (Shields, supra, 199 Cal.App.4th at p. 332.) "When a person creates multiple photographs of child pornography, the person adds to the market more than the person who creates one photograph of child pornography. Each additional photograph further exploits the minor victim, and the Legislature clearly intended to prevent that exploitation by criminalizing its creation. The Legislature's attempt to end the exploitation of children by criminalizing the creation of each item of child pornography can be contrasted to the possession

17

of child pornography." (Ibid.)

Based on our examination of the photographs in this case, we conclude defendant committed separate violations of section 311.4. No photograph challenged by defendant is a copy of another challenged photograph; each photograph is different.

The pairs of photographs challenged by defendant support separate convictions.  [Footnote 7.]

[Footnote 7:  We express no opinion about the application of section 311.4, subdivision (c) to other forms of media, such as a motion picture of a video of a single session involving child pornography, as such facts are not presented here.]

People v. Heller, 2013 WL 6018051 at *8-9.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A petitioner "is entitled to habeas corpus relief if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  See Jackson v. Virginia, 443 U.S. 307, 324 (1979).  A challenge to the sufficiency of evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Id. at 324 n.16; see also Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011) ("Insufficient evidence claims are reviewed by looking at the elements of the offense under state law.").  A federal court sitting in habeas review is "bound to accept a state court's interpretation of state law, except in the highly unusual case in which the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a constitutional violation."  Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

In the petition, petitioner makes the same arguments he raised in state court, i.e., that § 311.4(c) imposes a requirement that each photograph involve a substantially different pose. Petitioner again argues that because the photographs listed above were taken within seconds of each other, they did not involve substantially different poses.  The California Court of Appeal rejected this argument, finding § 311.4(c) authorizes a conviction for each separate photograph.

In this claim, petitioner challenges the California Court of Appeal's interpretation of

18

§ 311.4(c). The undersigned finds that the state appellate court's interpretation of Penal Code § 311.4(c) as authorizing a conviction for each separate photograph was not clearly untenable and did not amount to a subterfuge to avoid federal review of a constitutional violation.

The undersigned has reviewed the photographs, submitted under seal by respondent, and finds that petitioner's convictions for violating California Penal Code § 311.4(c), as alleged in counts 12, 13, 18, 19, 20, 22, 23, 27 and 29, are supported by sufficient evidence. The photographs are not copies and were taken at different times.[4] Accordingly, petitioner's claim alleging insufficient evidence to support these convictions is without merit.

After independently reviewing the record, the undersigned finds that the denial of this claim by the California Supreme Court was not an objectively unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

D. Claim Four: Alleged Double Jeopardy Violation

Petitioner argues that his punishment for convictions 12, 13, 18, 19, 20, 22, 23, 27 and 29 should have been stayed, pursuant to California Penal Code § 654. Petitioner also argues that his multiple punishments for the alleged single acts involved with these convictions violate the Federal Double Jeopardy Clause.

Petitioner raised his Double Jeopardy claim in both the California Court of Appeal and California Supreme Court. Neither court issued a reasoned decision addressing this claim. Accordingly, the undersigned independently reviews the record to determine whether the denial of this claim was an objectively unreasonable application of clearly established federal law. Plasencia v. Alameida, 467 F.3d at 1197-98.

The California Court of Appeal addressed only petitioner's claim alleging a violation of California Penal Code § 654:

> Defendant also contends some of the sentences for using a minor to
> pose for pornography must be stayed pursuant to Penal Code

---

[4] In his opening brief filed in the California Court of Appeal, petitioner admitted that the photographs in counts 12, 13, 18, 19, 20, 22, 23, 27 and 29 were taken at different times, although some seconds apart. (Respondent's Lodged Document 1 at 51-53.) Petitioner argued that his convictions for these counts should be reversed because in some photographs, the victim had not changed her pose or else the change in her pose was insignificant. (Id.)

19

section 654 because the photographs do not depict different poses.

The trial court imposed consecutive sentences on the convictions for counts twelve, thirteen, eighteen, nineteen, twenty, twenty-two, twenty-three, twenty-seven and twenty-nine [using a minor to pose for pornography], finding that the crimes in those counts were independent of one another, having occurred at different times and separate places. None of the imposed sentences were stayed.

Defendant claims section 654 requires those sentences to be stayed because the evidence does not demonstrate separate acts punishable under section 311.4, subdivision (c). We rejected the premise of defendant's claim in the preceding section. But defendant also argues that section 654 bars multiple punishments on those counts because the act upon which each count is based did not involve a separate intent and objective, and the predicate photographs were taken close in time, with no opportunity for defendant to reflect on his conduct.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Although the statute refers to "an act or omission," it is well settled that section 654 applies to a course of conduct which constitutes an indivisible transaction. (People v. Perez (1979) 23 Cal.3d 545, 551 (Perez).) "Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (Ibid.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (Ibid., fn. omitted.)

A defendant's intent and objective are factual questions for the trial court. (People v. Coleman (1989) 48 Cal.3d 112, 162.) We review the trial court's express and implicit factual findings in imposing multiple punishment for substantial evidence. (Ibid.) We view the record in the light most favorable to the trial court's findings and presume the existence of every fact the trial court could reasonably deduce from the evidence. (People v. Jones (2002) 103 Cal.App.4th 1139, 1143.)

Substantial evidence supports the trial court's finding that the challenged crimes are independent of one another. Each violation of section 311.4, subdivision (c) was complete—i.e., defendant used the minor to pose for a pornographic photograph—before the next section 311.4, subdivision (c) violation occurred. The photographs also show a difference in setting, attire, pose, focus, or use of props. Defendant was not punished for committing a single act.

In his reply brief, defendant cites <u>People v. Hertzig</u> (2007) 156 Cal.App.4th 398 (<u>Hertzig</u>) and <u>People v. Manfredi</u> (2008) 169 Cal.App.4th 622 (<u>Manfredi</u> for the proposition that separate clicks of the camera do not, without more, establish separate intents and objectives. However, <u>Hertzig</u> and <u>Manfredi</u> involve convictions for possession of child pornography, a crime distinguishable from production of child pornography. (<u>People v. Haraszewski</u> (2012) 203 Cal.App.4th 924, 945; <u>People v. Shields</u>, <u>supra</u>, 199 Cal.App.4th at p. 332.) And <u>Hertzig</u> and <u>Manfredi</u> do not discuss the application of section 654.

Defendant further argues that he could not have entertained a separate intent and objective as to each photograph because the photographs were taken in rapid succession. But even if a defendant commits multiple acts with the same objective, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (People v. Beamon (1973) 8 Cal.3d 625, 639, fn. 11; <u>Perez</u>, <u>supra</u>, 23 Cal.3d at p. 553; see also <u>People v. Harrison</u> (1989) 48 Cal.3d 321, 325–326, 335–338; <u>People v. Trotter</u> (1992) 7 Cal.App.4th 363, 366–368; <u>People v. Clair</u> (2011) 197 Cal.App.4th 949, 959–962.)

Here, the challenged convictions are based on separate and distinct acts by defendant. Although the interval between the taking of each photograph is short, the trial court implicitly concluded that defendant had an opportunity to reflect between the taking of each photograph but nevertheless elected to repeat his crime. (<u>People v. Trotter</u>, supra, 7 Cal.App.4th at p. 368.) This is especially true where there is a change in the setting of the photographs, in the minor's attire, in the focus of the photograph, or in the employment of different props.

The trial court was not required to stay the challenged sentences pursuant to section 654.

(<u>People v. Heller</u>, 2013 WL 6018051 at * 9-10.)

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Under the Double Jeopardy Clause, "multiple punishments for the same offense" are prohibited. <u>Whalen v. United States</u>, 445 U.S. 684, 688 (1980). "An indictment is multiplicitous when it charges multiple counts for a single offense, thereby resulting in two penalties for one crime and raising double jeopardy concerns." <u>United States v Mancuso</u>, 718 F.3d 780, 791 (9th Cir. 2013) (citations omitted).

The test for multiplicity requires the court to determine "whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty." <u>Blockburger v. United States</u>,

284 U.S. 299, 302 (1932) (two drug sales made at separate times do not constitute a continuous offense); compare <u>In re Snow</u>, 120 U.S. 274, 286 (1887) (cohabiting with multiple women constitutes a continuous offense). More simply put, the test for determining if multiple counts charge separate and distinct offenses is whether one count requires proof of a fact which the other does not. <u>United States v. Segall</u>, 833 F.2d 144, 147 (9th Cir. 1987) (citing <u>Blockburger</u>, 284 U.S. at 304).

The at-issue convictions for violating California Penal Code § 311.4(c) each require proof of different facts, i.e., each conviction was based on a separate photograph. Therefore, these convictions were not multiplicitous. Moreover, as observed by respondent, if it is evident that Congress, or a state legislature, intended to authorize cumulative punishments, a federal court's inquiry is at an end. <u>See</u> <u>Ohio v. Johnson</u>, 467 U.S. 493, 499 n.8 (1984); <u>Missouri v. Hunter</u>, 459 U.S. 359, 369 (1983). Petitioner's double jeopardy claim is without merit because, as recognized by the California Court of Appeal, it is clear that the California legislature authorized multiple convictions and multiple punishments for petitioner's having taken multiple photographs.

After conducting an independent review, the undersigned finds that the California Supreme Court's denial of petitioner's Double Jeopardy claim was not an objectively unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

Petitioner's claim alleging that his sentence for the at-issue counts violates California Penal Code § 654 is not cognizable in federal habeas. <u>See</u> <u>Watts v. Bonneville</u>, 879 F.2d 685, 687 (9th Cir. 1989) (holding that a claim of sentencing error for imposing "two sentences for a single act" under California Penal Code § 654 is not cognizable on federal habeas review).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 3, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hell587.fr